JS-6

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN OHEB MD, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, a corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:20-cv-08478-JWH-RAOx<br><br>**ORDER ON MOTION OF DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA TO DISMISS [ECF No. 12]** |

# I.  INTRODUCTION

Before the Court is the motion of Defendant Travelers Casualty Insurance Company of America to dismiss this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  For the reasons described below, the Court **GRANTS** the Motion.

# II.  BACKGROUND

Plaintiff Jonathan Oheb MD, Inc. ("Oheb") is a hand and orthopedic surgery practice with locations in Beverly Hills, Encino, and Mission Hills, California.[2]  On or about August 9, 2019, Oheb and Travelers entered into a contract of insurance[3] that included coverage for certain business income losses.[4]  Oheb alleges that it paid all premiums and that the Policy provided "property, business income and extra expense, and additional coverages between September 24, 2019 to September 24, 2020."[5]

"The Policy is a so-called 'all-risk' commercial general liability policy, insofar as it covers all risks unless clearly and specifically excluded."[6]  The Policy covers three "Insured Properties," which are "located at:  (1) 5363 Balboa Blvd. Suite 445, Encino, CA 91316; (2) 11550 Indian Hills Road, Suite 310, Mission Hills, CA 91345; and (3) 150 N. Robertson Blvd., Suite 360, Beverly Hills, California 90211."[7]  "The Policy provides business income and extra expense coverage for up to a 12-month period based on the partial slowdown or complete cessation of Plaintiff's business activities resulting from

---

[1]     Def.'s Mot. to Dismiss (the "Motion") [ECF No. 12].
[2]     Compl. (the "Complaint") [ECF No. 1-2] ¶ 1.
[3]     Decl. of Kenneth Kupec, Ex. 1 (the "Policy") [ECF No. 13-2].
[4]     Complaint ¶ 11.
[5]     *Id.* at ¶ 14.
[6]     *Id.*
[7]     *Id.* at ¶ 12.

*physical loss or damage to the Insured Properties*."[8]  "Additionally, the Policy provides coverage for actions of 'Civil Authority,' which covers loss of business income and extra expenses from governmental orders, such as those that prohibited Plaintiff from accessing the Insured Properties."[9]  Per the Policy, "[t]he civil authority action must be due to *direct physical loss of or damage to property* at locations, other than described premises, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss."[10]

In the wake of the COVID-19 pandemic, Oheb alleges that it was "forced to shut down and otherwise suspend the majority of its practice" as a result of a series of state and local orders preventing it from treating patients seeking non-emergency care.[11]  "Because of the widespread existence of the Coronavirus in the local community, the State of California and City and County of Los Angeles declared states of emergency and issued stay-at-home orders that caused substantial interruption to Plaintiff's business."[12]  For example, on or about March 19, 2020, the City of Los Angeles instructed that all non-essential healthcare visits should be cancelled, postponed or conducted remotely."[13]  On March 16, 2020, the City of Beverly Hills issued a stay-at-home order "prohibiting all elective medical and surgical procedures."[14]  These and similar orders "caused substantial interruption to [Oheb's] business."[15]  According to

---

[8]  *Id.* at ¶ 15 (emphasis added).
[9]  *Id.* at ¶ 16.
[10]  Policy at 98 (emphasis added).
[11]  *See* Compl. at ¶ 2.
[12]  *Id.* at ¶ 21.
[13]  *Id.* at ¶ 24.
[14]  *Id.* at ¶ 26.
[15]  *Id.* at ¶ 21.

Oheb, as a result of these orders, "access to the Insured Properties was prohibited for anything but emergency procedures."[16]

In or around April 2020, Oheb made a claim to Travelers "for business interruption coverage under the Policy for the losses associated with the COVID-19 pandemic."[17]  Travelers denied coverage, contending, among other things, that "there was no direct physical loss or damage from the Coronavirus and the Orders were not the result of direct or threatened physical loss to the Insured Properties or immediate area around them."[18]

On August 4, 2020, Oheb filed its Complaint against Travelers in Los Angeles County Superior Court, alleging breach of contract, breach of the implied duty of good faith and fair dealing, and unfair business practices.  Oheb seeks a declaration that the Policy provides coverage for business interruption loses stemming from the COVID-19 pandemic.[19]  Travelers removed this action to this Court on September 16, 2020,[20] and filed the instant Motion on September 23, 2020.

### III.  LEGAL STANDARDS

A defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive such a motion, the complaint must articulate "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint need not contain "detailed factual allegations," but it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.* at 555.  "A claim has facial plausibility when

---

[16]     *Id.* at ¶ 29.
[17]     *Id.* at ¶ 31.
[18]     *Id.* at ¶ 31.
[19]     *Id.* at ¶¶ 32-58.
[20]     Def.'s Notice of Removal [ECF No. 1].

1  the plaintiff pleads factual content that allows the court to draw the reasonable
2  inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*
3  *Iqbal*, 556 U.S. 662, 678 (2009).

4      The California Supreme Court[21] has explained the law governing the
5  interpretation of insurance contracts as follows:

6          "[I]nterpretation of an insurance policy is a question of law."
7  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal. 4th 1, 18, 44
8  Cal. Rptr. 2d 370, 900 P.2d 619 (*Waller*) "While insurance contracts
9  have special features, they are still contracts to which the ordinary
10  rules of contractual interpretation apply." (*Bank of the West v.*
11  *Superior Court* (1992) 2 Cal. 4th 1254, 1264, 10 Cal. Rptr. 2d 538, 833
12  P.2d 545 (*Bank of the West*).) Thus, "the mutual intention of the
13  parties at the time the contract is formed governs interpretation."
14  (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal. 3d 807, 821, 274
15  Cal. Rptr. 820, 799 P.2d 1253 (*AIU Ins.*).) If possible, we infer this
16  intent solely from the written provisions of the insurance policy.
17  (See *id.* at p. 822, 274 Cal. Rptr. 820, 799 P.2d 1253.) If the policy
18  language "is clear and explicit, it governs." (*Bank of the West, supra,*
19  2 Cal. 4th at p. 1264, 10 Cal. Rptr. 2d 538, 833 P.2d 545.)

20          When interpreting a policy provision, we must give its terms
21  their "'ordinary and popular sense,' unless 'used by the parties in a
22  technical sense or a special meaning is given to them by usage.'"
23  (*AIU Ins., supra,* 51 Cal. 3d at p. 822, 274 Cal. Rptr. 820, 799 P.2d
24  1253, quoting Civ. Code, § 1644.) We must also interpret these
25  terms "in context" (*Bank of the West, supra,* 2 Cal. 4th at p. 1265, 10
26  Cal. Rptr. 2d 538, 833 P.2d 545), and give effect "to every part" of

---

[21] The parties appear to agree that California law governs the interpretation of the Policy.

the policy with "each clause helping to interpret the other." (Civ. Code, § 1641; see also *Holz Rubber Co., Inc. v. American Star Ins. Co.* (1975) 14 Cal. 3d 45, 56, 120 Cal. Rptr. 415, 533 P.2d 1055.)

A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole. (See *Foster–Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal. 4th 857, 868, 77 Cal. Rptr. 2d 107, 959 P.2d 265 (*Foster–Gardner*).) The court may then "invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal. 4th 27, 37, 36 Cal. Rptr. 2d 100, 884 P.2d 1048.)

*Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999).

## IV.  DISCUSSION

### A.  "Direct Physical Loss"

Travelers first argues that Oheb "is not entitled to Business Income or Extra Expenses coverage because it has not—and cannot—plead facts to establish 'direct physical loss of or damage to property' at the insured premises."[22]  As Oheb states in its Opposition,[23] Travelers' key argument "centers around the coverage clause, which provides, in pertinent part: 'We will pay for ***direct physical loss of or damage to*** Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.'"[24]  Travelers argues that Oheb does not allege that "anything physically

---

[22]     Motion 8:15-17.

[23]     Pl.'s Opp'n to Motion (the "Opposition") [ECF No. 25].

[24]     *Id.* at 6:4-7 (quoting the Policy at 84).

happened to its property" or to "the buildings in which it rents space."[25]
Travelers points to several district court cases, including cases in California,
holding that plaintiffs failed to state a claim when they failed adequately to allege
"direct physical loss of or damage to property."[26]

In a recent case interpreting identical language in a Travelers insurance
policy, a Court in this district concluded that the prohibition of in-person dining
at the plaintiff's restaurant because of the pandemic did not constitute "'direct
physical loss of or damage to Covered Properties.'" *10E, LLC v. Travelers
Indem. Co. of Connecticut*, No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at
*4 (C.D. Cal. Sept. 2, 2020) (Wilson, J.).  The Court granted Travelers' motion
to dismiss, applying reasoning that applies with equal force here.  The Court
held that "[u]nder California law, losses from inability to use property do not
amount to 'direct physical loss of or damage to property' within the ordinary
and popular meaning of that phrase." *Id.* (citing *MRI Healthcare Ctr. of
Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010)); *see
also Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*,
No. SACV 20-01713-CJC (JDEx), 2020 WL 6865774, at *2 (C.D. Cal. Nov. 12,
2020) (same).  Rather, a compensable "direct physical loss" requires "some
*external force*" to "have acted upon the insured property to cause a *physical
change* in the condition of the property, i.e., it must have been 'damaged' within
the common understanding of that term." *MRI Healthcare*, 187 Cal. App. 4th at
780 (emphasis in original).  Oheb does not plead any such "physical change"
here.

Oheb relies on a contrary decision in *Total Intermodal Servs. Inc. v.
Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908 AB (KSx), 2018 WL 3829767,

---

[25]     Motion 8:26-9:1.

[26]     *Id.* at 9:4-11:20.

at \*4 (C.D. Cal. July 11, 2018). *Total Intermodal* distinguished *MRI Healthcare*, noting that there the "operative language was 'direct physical loss **_to_** business personal property'" rather than "'loss *of* or damage to.'" *Id.* at \*3-\*4 (emphases in original). But *Total Intermodal* does not help Oheb because that case involved a ***permanent*** loss of property rather than a temporary limitation on the use of property. *See id.* at \*4-\*5.

Oheb pleads that, as a result of the various pandemic-related government orders, "access to the Insured Properties was prohibited for anything but emergency procedures."[27] Oheb also avers that "the Coronavirus has caused, is causing, and will continue to cause direct physical damage and loss in and around the immediate area of the Insured Properties."[28] The former averment is implausible (the orders did not prevent ***all*** access other than for emergency procedures) and the latter averment is conclusory; neither plausibly pleads physical alteration or "***permanent*** dispossession of something." *Total Intermodal*, 2018 WL 3829767, at \*4 (emphasis added). Accordingly, the "loss of or damage to" language in the Policy does not permit coverage for the interruption of Oheb's business resulting from the pandemic.

Because the above interpretation of the "loss of or damage to" language is fatal to each of the provisions of the Policy upon which Oheb relies for coverage,[29] the Court **GRANTS** Travelers' Motion.

**B.**   **Request for Leave to Amend**

Oheb requests leave to amend.[30] The policy of granting leave freely is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan*,

---

[27]   Complaint ¶ 29

[28]   *Id.* at ¶ 30.

[29]   *See, e.g., id.* at ¶¶ 15, 16, 31, & 56.

[30]   Opposition 22:25.

*Inc.*, 244 F.3d 708, 712 (9th Cir.2001)).  However, "[a] district court does not err in denying leave to amend where the amendment would be futile [citation], or where the amended complaint would be subject to dismissal."  *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted).  Although Oheb has requested leave to amend, it has not explained how it could cure the defects in the pleading.  Rather, this case turns on the legal interpretation of the insurance contract at issue.  The Court finds that leave to amend would be futile and therefore **GRANTS** the motion to dismiss **without leave to amend**.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion and dismisses the Complaint **without leave to amend**.  The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED.**

Dated: December 30, 2020

John W. Holcomb
UNITED STATES DISTRICT JUDGE